UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TENA COMPANIES, INC., | Case No. 21-CV-1814 (NEB/JFD) |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION TO DISMISS |
| ELLIE MAE, INC., | |
| Defendant. | |

For years, TENA Companies, Inc. worked with Ellie Mae, Inc. to offer an online "ReportBuilder" product pursuant to a general services agreement, which included a non-competition provision. In 2020, Ellie Mae terminated the parties' relationship, stopped offering ReportBuilder, and then started offering a similar online reporting tool. TENA's complaint asserts that Ellie Mae breached the non-competition provision of their agreement and was unjustly enriched by offering this new tool. Ellie Mae[1] now moves to dismiss TENA's breach of contract claim and its claim for damages. For the reasons that follow, the motion is denied.

---

[1] The motion states that "Defendant ICE Mortgage Technology, Inc. [was] formerly known as Ellie Mae, Inc." (ECF No. 5.) To avoid confusion, the Court calls Defendant "Ellie Mae."

## BACKGROUND

### I. TENA and AllRegs

TENA develops products that help mortgage providers comply with mortgage lending regulations. (ECF No. 1-1 ("Compl.") ¶ 10.) In February 2005, TENA entered into a General Services Agreement ("GSA") with Mortgage Resource Center, Inc. ("AllRegs"). (*Id.* ¶ 13.) Under the GSA, TENA agreed to support AllRegs's State Analysis and Commentary product by creating summaries of state statutes and regulations that were "understandable to non-lawyer mortgage professionals." (*Id.* ¶ 15.) The GSA includes a choice-of-law provision as well as a provision limiting damages. (ECF No. 1-1 at 32–36 ("GSA") §§ 7, 13.)

The next year, TENA and AllRegs entered into Schedule 2 to the GSA to facilitate their co-development of an online query application called State Compliance ReportBuilder. (Compl. ¶ 17; *see id.* ¶¶ 34–42 (describing ReportBuilder).) TENA provided the content for ReportBuilder, which includes subject matter for the 50 states and District of Columbia. (*Id.* ¶¶ 20, 35.) ReportBuilder was to work with and augment AllRegs's State Analysis and Commentary product. (*Id.* ¶ 17.)

Schedule 2 included the following non-competition provision:

> In the event AllRegs terminates this Schedule 2 for any reason other than pursuant to [certain sections of Schedule 2] or mutual agreement, AllRegs cannot issue a competing or similar product for 3 years from the date of termination.

(ECF No. 1-1 at 46–61 ("Schedule 2") § 14(b).)

**II.     TENA and Ellie Mae**

In 2014, Ellie Mae succeeded AllRegs in its relationship with TENA, acquiring AllRegs's rights, title, interest, and obligations under the GSA. (Compl. ¶ 25.) The three companies—Ellie Mae, AllRegs, and TENA—entered into an Amendment, Assignment, Assumption and Waiver Agreement ("Amendment Agreement"), under which Ellie Mae agreed to be bound by the terms of the GSA and Schedule 2. (*Id.* ¶¶ 25–26.)

The Amendment Agreement narrowed the scope of the restrictions on competition. (*Id.* ¶¶ 26, 31–32; *see* ECF No. 1-1 at 57–61 ("Am. Agreement") at 1 (noting "the parties desire to execute this Amendment to modify the scope of certain provisions of the Agreement relating to [the parties'] ability to compete in certain lines of business or sell certain products or services").) Under the Amendment Agreement, Ellie Mae and TENA agreed to waive the previous non-competition provision in Schedule 2 of the GSA, "so long as any such competing or similar products and services are developed, sold, or otherwise provided in a manner that is independent and distinct from that of the AllRegs brand of products and services." (Am. Agreement § 3.) The Amendment Agreement provided that "in the event [Ellie Mae] terminates the Agreement for any reason other than pursuant to [certain sections] of Schedule 2, or by mutual Agreement, [Ellie Mae] cannot issue a competing or similar product to ReportBuilder *under the AllRegs brand* for 3 years from the date of termination." (*Id.* (emphasis added).) The Amendment Agreement also provided that:

3

> in the event [Ellie Mae] terminates the Agreement for any reason other than pursuant to [certain sections] of Schedule 2, or by mutual Agreement, [Ellie Mae] may not utilize or incorporate any products or software code of [AllRegs] in existence immediately prior to the consummation of the Sale Transaction or any reasonable extensions and/or improvements thereto that occurs after consummation of the Sales Transaction for 3 years from the date of termination.

(*Id.* § 5.)

ReportBuilder—which incorporated TENA's content—was a key compliance tool for the mortgage industry for fifteen years. (Compl. ¶ 43.) For six of those years, TENA and Ellie Mae split the proceeds from ReportBuilder evenly, with TENA's portion of the revenue from ReportBuilder being about $1 million per year. (*Id.* ¶¶ 43–44.)

### III. The Dispute

In September 2020, Intercontinental Exchange, Inc. acquired Ellie Mae. (Compl. ¶ 45.) The same month, Ellie Mae notified TENA that it was terminating their business relationship effective April 1, 2021. (*Id.* ¶ 46.)

In March 2021, Ellie Mae stopped offering ReportBuilder and began offering a "ReportBuilder copycat" product called "AllRegs Analysis & Commentary Reporting Tool" ("Reporting Tool") that "competes with and is remarkably similar to AllRegs ReportBuilder." (*Id.* ¶¶ 51, 56; *see also id.* ¶¶ 52–67.)

TENA filed this lawsuit against Ellie Mae, alleging breach of contract and unjust enrichment claims stemming from Ellie Mae's Reporting Tool product. TENA asserts that Ellie Mae breached the non-competition provisions of the Amendment Agreement by

4

offering this new "copycat" product. (*Id.* ¶¶ 70–74; *see* ECF No. 16 ("Pl's Br.") at 10 (citing Am. Agreement §§ 3, 5).) TENA also contends that if any portion of the parties' agreement is invalid or unenforceable, it is entitled to equitable relief because Ellie Mae was unjustly enriched. (Compl. ¶¶ 76–79.) Among other relief, TENA seeks damages, exemplary damages, and pre- and post-judgment interest. (*Id.* at 21–22.)

## ANALYSIS

### I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). Factual allegations in the complaint must be enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage in the litigation, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). The Court assesses the plausibility of the complaint considering only the materials that are necessarily embraced by the pleadings

5

and are exhibits to the complaint. *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 850 (8th Cir. 2020).

## II. Breach of Non-Competition Provision

Ellie Mae contends the non-competition provisions at issue are invalid and unenforceable, and thus the case must be dismissed.[2] TENA argues that the enforceability of the non-competition provisions is a fact question, unsuitable for a motion to dismiss. (Pl's Br. at 11–14); *see Dean Van Horn Consulting Assocs., Inc. v. Wold*, 395 N.W.2d 405, 408 (Minn. Ct. App. 1986) ("[T]he reasonableness of a restrictive covenant clause is a question of fact."). And indeed, the general rule is that where the validity of a non-competition provision depends on an analysis of facts, it is not appropriate for a motion to dismiss. *C.H. Robinson Worldwide, Inc. v. Tu*, No. 19-CV-1444 (MJD/BRT), 2020 WL 2733787, at *2 (D. Minn. May 26, 2020). But courts have granted motions to dismiss where plaintiffs failed to plead a plausible claim for relief relating to noncompete agreements. *E.g., Rao v. St. Jude Med. S.C., Inc.*, No. 19-CV-923 (MJD/BRT), 2020 WL 4060670, at *7 (D. Minn. May 26, 2020) (recommending dismissal of declaratory judgment claim that non-competition provision was overly broad and not reasonably tailored because the

---

[2] The parties do not dispute that Minnesota law governs the parties' agreements. (*See* GSA § 13.) At first, Ellie Mae focused its invalidity argument on the non-competition provision in Schedule 2. But that provision is not the basis of TENA's breach of contract claim. Rather, TENA relies on two provisions in the Amendment Agreement that replaced the Schedule 2 non-competition provision. (Am. Agreement §§ 3, 5.) Ellie Mae did not address the Amendment Agreement provisions in its reply brief, but at oral argument, maintained that its argument applies with equal force to those provisions.

allegations were "conclusory and insufficient" to support the claim), *report & recommendation adopted*, 2020 WL 4059876 (D. Minn. July 20, 2020); *Ricoh USA, Inc. v. Bailon*, 419 F. Supp. 3d 871, 877 (E.D. Pa. 2019) (dismissing claim where plaintiff had not plausibly alleged the existence of a valid, enforceable restrictive covenant). Under this framework, the Court need only determine whether TENA pleads a plausible claim for relief.

Before the Court can determine the plausibility of TENA's breach of contact claim, it must determine which standard for enforceability of noncompete agreements applies here. Minnesota courts recognize a distinction between (1) noncompete agreements that "relate to employment contracts entered into by wage earners" and (2) those that "relate to the ordinary commercial transaction involving business or property transfers." *Bennett v. Storz Broadcasting Co.*, 134 N.W.2d 892, 899 (Minn. 1965). "A different measure of reasonableness is used." *Id.*; *see Lapidus v. Lurie LLP*, No. A17-1656, 2018 WL 3014698, at *4 (Minn. Ct. App. June 18, 2018) (admonishing against "blurr[ing] the lines between the two tests").[3]

---

[3] In *County Materials Corp. v. Allan Block Corp.*, the Seventh Circuit applied Minnesota law to a noncompetition provision between two corporations who had agreed not to compete after the termination of a patent license agreement. 502 F.3d 730, 734, 737–40 (7th Cir. 2007). Finding a valid and enforceable covenant, the Seventh Circuit relied on factors used in assessing an employee's noncompete provision, explaining that it found the factors "equally useful in evaluating the non-compete provision at issue here." *Id.* at 738. Given Minnesota courts' more recent admonition against blurring the lines between tests, *Lapidus*, 2018 WL 3014698, at *4, the Court declines to do so here.

In the employment context, an enforceable noncompete agreement is "(1) necessary to protect the employer's business or goodwill, (2) is not more restrictive than is reasonably necessary considering 'the nature and character of the employment' and the duration and geographic scope of the restriction, and (3) 'not injurious to the public.'" *Amano McGann, Inc. v. Klavon*, No. A21-0237, 2021 WL 5442339, at *2 (Minn. Ct. App. Nov. 22, 2021) (citing *Walker Emp. Serv., Inc. v. Parkhurst*, 219 N.W.2d 437, 441 (Minn. 1974)); *see Bennett*, 134 N.W.2d at 899. Courts use this approach "to protect 'the average individual employee who as a result of his unequal bargaining power may be found in oppressive circumstances.'" *Lapidus*, 2018 WL 3014698, at *4 (citing *Bennett*, 134 N.W.2d at 899). Ellie Mae initially asserted that the Complaint fails to allege facts supporting the validity of a non-competition provision based on the employment-related test. (*E.g.,* ECF No. 7 ("Def's Br.") at 5.) As TENA correctly points out, this case does not involve an employment relationship. The Court therefore declines to apply this standard to the non-competition provisions.

Instead, the Court looks to the test Minnesota courts use in connection with business or property transfers. *See Bess v. Bothman*, 257 N.W.2d 791, 795 (Minn. 1977); *Hypred S.A. v. Pochard*, No. 04-CV-2773 (JNE/JGL), 2004 WL 1386149, at *2 (D. Minn. June 18, 2004) ("Because the Agreement was entered into in connection with the sale of A & L, the Court will apply the standard of reasonableness described in *Bess*."). In *Bess*, the defendant sold two tow trucks to Delmar Branum, who agreed to buy the trucks if

8

the defendant signed a noncompete agreement; the defendant did so. 257 N.W.2d at 793. When the defendant later began operating a towing service, Branum sued to enforce the noncompete agreement. *Id.* at 793–94. The trial court entered an injunction against the defendant. *Id.* at 794. On appeal, the *Bess* court held that "[a] party may purchase the goodwill of a business and, to protect his investment, require the seller not to compete with the business sold." *Id.* (affirming trial court). The court considered the enforceability of such noncompete agreements using a three-step test: "First, whether the restriction exceeds the protection necessary to secure the goodwill purchased; second, whether the restriction places an undue hardship on the covenantor; and third, whether the restriction has a deleterious effect on the interests of the general public." *Id.* at 795.

The Court finds that, accepting as true all factual allegations and viewing them in the light most favorable to TENA, the breach of contract claim plausibly states a claim for relief under the *Bess* standard. Although the relationship between Ellie Mae and TENA did not involve the sale of a business, it did involve a business venture between two companies. Thus it appears, at this stage of the litigation, that the *Bess* test is more relevant than the employment test.[4] And under *Bess*, protection of an investment in business

---

[4] While not cited by either party, courts applying Minnesota law have also considered non-competition provisions in the context of franchise agreements. They explain that "[a] noncompete covenant that 'is for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public,' is generally held valid despite the public policy disfavoring restraints on trade." *Adcom Express, Inc. v. EPK, Inc.*, No. C6-95-2128, 1996 WL 266412, at *4 (Minn. Ct. App. May 21, 1996) (citing *Bennett*, 134 N.W.2d at 898-99); *see*

9

goodwill is a legitimate purpose of a noncompete agreement. 257 N.W.2d at 794. TENA alleges that the non-competition provisions "serve to protect both Ellie Mae's and TENA's investments of expertise, time, and resources in ReportBuilder." (Compl. ¶ 28.) Those investments resulted in user goodwill, which inured to the benefit of AllRegs as the company whose name was on the product. (Pl's Br. at 17.) The noncompete agreement, according to TENA, was a way to limit the ability of Ellie Mae to exploit the goodwill that both parties developed. (*Id.*) Thus, the parties agreed to the noncompete "[i]n recognition of the fact that TENA invested considerable time and resources in ReportBuilder, yet any user goodwill" remained with Ellie Mae. (*Id.*) Because the Complaint alleges facts to support this theory, the Court will not dismiss the case for unenforceability of the non-competition provisions.

Applying *Bess*'s three-part test, the Court finds that the Complaint lacks facts suggesting that the non-competition provisions in the Amendment Agreement "exceed the protection necessary to secure the goodwill" at issue. 257 N.W.2d at 795. Nor does the Complaint contain facts indicating that the non-competition provisions would "place an undue hardship" on Ellie Mae. *Id.* And finally, the Complaint does not allege an "effect on the interests of the general public." *Id.* ReportBuilder and its "copycat" collect and compare laws and regulations from various jurisdictions, (*e.g.,* Compl. ¶¶ 20, 35, 64);

---

*Anytime Fitness, LLC v. Edinburgh Fitness LLC*, No. 14-CV-348 (DWF/JJG), 2014 WL 1415081, at *5 (D. Minn. Apr. 11, 2014) (citations omitted). Under this test, the Complaint passes muster as well.

nothing in the Complaint suggests that this information is not publicly available, or that the public could not use Ellie Mae's State Analysis and Commentary product.

Because TENA pleads a plausible claim for relief, the Court denies Ellie Mae's motion to dismiss the breach of contract claim.[5]

### III.  Claim for Damages

The Complaint seeks damages for Ellie Mae's alleged wrongdoing, exemplary damages, and pre- and post-judgment interest. (Compl. at 22.) Ellie Mae argues that the GSA precludes recovery of damages. Section 7 of the GSA provides:

> In no event shall either party be liable to the other party or any other person for any consequential, incidental, indirect, special, punitive and/or exemplary damages, including without limitation damages for lost profits, arising out of or relating to this agreement or any schedules or the subject matter hereof, even if such party has been advised of the possibility of such loss or damage.

(GSA § 7 (capitalization omitted).) If "two sophisticated parties negotiated a commercial contract," the Court "will not rewrite the contract in order to save a contracting party from its own poor decisions" absent "fraud, duress, or other form of unconscionability." *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, 44 F.3d 629, 637 (8th Cir. 1994) (applying Minnesota law).

---

[5] Ellie Mae also argues that the Court should not "blue pencil" the non-competition provisions. (*E.g.,* Def's Br. at 8–9.) This argument is premature because applying the blue pencil doctrine is a fact-intensive exercise. *See Bess*, 257 N.W.2d at 794 (explaining that under the "blue pencil" doctrine, courts modify unreasonable restraints of trade and "enforce them to the extent reasonable in the circumstances").

Ellie Mae cites two cases to argue that Section 7 bars TENA's damages claims. (Def's Br. at 10.) Both cases consider whether a damages exclusion was unconscionable. In *International Financial Services, Inc. v. Franz*, the Minnesota Supreme Court held that a consequential damages exclusion is valid and enforceable unless it is unconscionable. 534 N.W.2d 261, 269 (Minn. 1995). The court explained that "where the parties were both merchants and there was no great disparity in their bargaining strength and where the claim is for commercial loss, there is nothing that makes it unconscionable to enforce the allocation of risk incorporated into the parties' contract." *Id.* And in *Transport Corporation of America, Inc. v. International Business Machines Corp.*, the Eighth Circuit held that a damages exclusion "set forth in advance in a commercial agreement between experienced business parties represents a bargained-for allocation of risk that is conscionable as a matter of law." 30 F.3d 953, 960 (8th Cir. 1994) (holding that a disclaimer of consequential damages was not unconscionable and thus precluded recovery of such damages). Neither *Franz* nor *Transport* addresses the validity of a damages exclusion at the motion to dismiss stage. *See Franz*, 534 N.W.2d 261 (trial); *Transport*, 30 F.3d 953 (summary judgment). Both courts considered facts in determining that the damages exclusions were conscionable. *E.g., Franz*, 534 N.W.2d at 269 (noting that the parties were both merchants with no great disparity in bargaining strength); *Transport*, 30 F.3d at 960 (noting that the entities were sophisticated business entities of relatively equal bargaining power).

Moreover, as TENA notes, GSA Section 7 does not specifically address direct damages or pre- or post-judgment interest. (Pl's Br. at 29.) "To the extent it is unclear whether a particular category of damages constitutes lost profits or some other excluded damages category, it will likely be an issue for the finder of fact." *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, No. 02-CV-213 (JRT/FLN), 2004 WL 1447921, at *6 (D. Minn. June 28, 2004), *aff'd*, 460 F.3d 1047 (8th Cir. 2006). Thus, this issue is not appropriate for a motion to dismiss.

And because Section 7 applies only to damages "arising out of or relating to" the parties' contractual relationship, (GSA § 7), it does not limit damages resulting from TENA's unjust enrichment claim. *See Graffiti Ent., Inc. v. Speed Com. Inc.*, No. 14-CV-752 (ADM/FLN), 2014 WL 5795477, at *9 n.7 (D. Minn. Nov. 6, 2014) (rejecting argument that a limitation of liability clause barred certain remedies because liability for a tort claim would not flow from the parties' contract).

For these reasons, the Court denies the motion to dismiss TENA's damages claim.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 5) is DENIED.

Dated: March 3, 2022                                              BY THE COURT:

                                                                  s/Nancy E. Brasel
                                                                  Nancy E. Brasel
                                                                  United States District Judge